J-S05033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| W.R.K., | IN THE SUPERIOR COURT OF |
| | PENNSYLVANIA |
| Appellant | |
| | |
| v. | |
| | |
| R.A.K., | |
| | |
| Appellee | No. 1063 MDA 2015 |

Appeal from the Order Entered May 19, 2015
in the Court of Common Pleas of Lancaster County
Civil Division at No.: CI-14-07012

BEFORE: BENDER, P.J.E., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 05, 2016**

W.R.K. (Father) appeals from the order of the Court of Common Pleas of Lancaster County (trial court) entered May 19, 2015, which awarded primary physical custody of his daughters, N.K., born in August of 2006, and L.K., born in July of 2008 (Children), to R.A.K. (Mother) and established a schedule of partial physical custody for Father. The parties share legal custody. The order also grants Mother's request for relocation.[1] We affirm.

The record supports the following summary of the facts of this case. The parties met and began an intimate relationship when Father was twenty-

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In the order complained of, the trial court states, "[Mother's] request to relocate with the Children to Sinking Springs, Pennsylvania is hereby GRANTED." (Order, 5/19/15).

two years old and Mother was fifteen years old. Father denied that he knew Mother's age at the time. (*See* N.T. Custody Hearing, 3/24/15, at 96). Mother became pregnant and, with parental permission, married Father in 2006 when she was seventeen.[2]

Father lives in York, Pennsylvania, with his girlfriend and works full time Monday through Friday from 6:00 a.m. until 2:30 p.m. Mother is a stay-at-home mother. She lives with her boyfriend, their infant daughter, and the Children, in Sinking Springs, Pennsylvania. Prior to moving in with her boyfriend, Mother lived with her parents in Manheim, Pennsylvania.

Father lost his driving privileges in October of 2009 and received additional citations when he continued to drive while his privileges were suspended. Restoration of his privileges occurred in February of 2015. Father testified that, because of the suspension of his driving privileges, he agreed that Mother could have primary physical custody of the Children and that he would have partial physical custody every other weekend. (*See id.* at 50, 53). Father testified that Mother has threatened to withhold the Children from him if he does not comply with her wishes. (*See id.* at 53, 67-68, 77). He stated that Mother also makes derogatory statements to him in text messages. (*See id.* at 87).

_____

[2] The record before us does not indicate whether the parties are divorced or have begun divorce proceedings.

Mother testified that Father did not like the fact that she did not work outside the home. (*See id.* at 143). Father testified that Mother is lazy and wants everything handed to her. (*See id.* at 100-01). Father testified that Mother is dependent on her boyfriend to take care of her. (*See id.* at 64). Mother, who has been the primary caregiver for the Children, testified that it made no sense for her to work during the parties' marriage because all her earnings would have gone to pay for childcare. (*See id.* at 157-58). Mother last worked in January of 2014 at a retirement home in Manheim, Pennsylvania. She gave birth to her youngest child in September of 2014.

In February of 2014, shortly after she learned that she was pregnant with her youngest child, Mother moved approximately twenty-two additional miles away from Father's residence to Sinking Springs, Pennsylvania. Mother informed Father of her move in February of 2014.[3] After Mother moved, Father continued to exercise custody of the Children in accordance with their agreed informal custody schedule with the exception that the parties agreed to change the exchange location from Columbia to Lancaster. (*See id.* at 161-62).

Father filed his notice of relocation and a complaint in custody on August 3, 2014. The trial court entered a temporary order of custody on December 24, 2014, after the parties were unable to agree on a schedule of

---

[3] Mother never filed a formal request to relocate. (*See* N.T. Custody Hearing, 3/24/15, at 176).

- 3 -

custody at a custody conference held on December 11, 2014. The trial court held a hearing on Father's complaint on March 24, 2015. In addition to Mother and Father, the trial court heard testimony from Father's mother, E.N.; the older of the two Children, N.K.; Father's girlfriend, M.P.; Father's friend, J.M.; the mother of Father's girlfriend, R.L.; Mother's sister, E.G.; and Mother's fiancé, M.P. At a second hearing held on April 28, 2015, the trial court received the stipulated testimony of Mother's parents.[4] The trial court entered the order complained of and an accompanying opinion on May 19, 2015. In that opinion, the trial court examined each of the sixteen statutory

_____

[4] The transcript of that hearing is not part of the record before us. The trial court, however, in its opinion entered July 16, 2015, stated:

> The parties stipulated at the April 28, 2015 hearing that maternal grandparents would testify that:
>
> 1. Mother is a good mother;
> 2. Mother's move to Sinking Springs, Pennsylvania has only changed the distance Father would have to travel to the Children's school;
> 3. If the Court denied Mother's relocation to Sinking Springs, Pennsylvania, maternal grandparents would allow Mother to move back to their residence in Manheim, Pennsylvania;
> 4. Maternal grandparents are willing and able to help Mother with transportation;
> 5. Maternal grandparents have no concerns with the Children's health and safety in Mother's care;
> 6. When maternal grandparents visited Mother's home, it was clean.

(Trial Court Opinion, 7/16/15, at 3).

- 4 -

factors governing custody enumerated in 23 Pa.C.S.A. § 5328(a), and each of the factors governing relocation enumerated in 23 Pa.C.S.A. § 5337(h).

Father filed his notice of appeal and statement of errors complained of on appeal on June 18, 2015. *See* Pa.R.A.P. 1925(a)(2)(i).

Father presents the following fourteen questions for our review:

I. Did the trial court err in that it granted primary physical custody to Mother without Mother ever complying with 5337 requirements?

II. Did the trial court err in that it placed too much emphasis on Father's timeline objecting to Mother's move?

III. Did the trial court err in that it placed too little emphasis on Mother's relocation and its impact on Father's contact with the Children?

IV. Did the trial court err in that it placed too little emphasis on Mother's inability to communicate with Father?

V. Did the trial court err in finding that Mother's relocation would enhance the quality of life of Mother and the Children?

VI. Did the trial court err in that it found that Mother's motives for moving were not improper?

VII. Did the trial court err in finding Father's home unstable?

VIII. Did the trial court err in that it failed to properly consider that the majority of the Children's education occurred in Lancaster County?

IX. Did the court err when it did not give adequate consideration to Mother's repeated acts of alienation?

X. Did the trial court err in that it failed to consider that Mother's paramour and sole financial support, lied about his criminal history?

XI. Did the trial court err in that it failed to require a 5329 hearing for Mother's paramour when it was shown that he lied about getting into ARD [(Accelerated Rehabilitative Disposition)]?[5]

XII. Did the trial court err in that it failed to consider the entirety of the testimony regarding Mother's failure to provide a stable[,] loving, consistent and nurturing relationship with the Children?

XIII. Did the trial court err in that it failed to find a high level of conflict between the parties based upon Mother's actions?

XIV. Did the trial court err in that it failed to take into consideration Mother's abundance of lies that she admitted to in her testimony when making any determinations regarding the totality of her testimony?

(Father's Brief, at unnumbered pages 5-8) (unnecessary capitalization omitted).

Our scope and standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

_____

[5] M.P. was charged with driving under the influence (DUI) in 2010. (*See* N.T. Custody Hearing, 3/24/15, at 270).

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated,

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

We must accept the trial court's findings that are supported by competent evidence of record, and we defer to the trial court on issues of credibility and weight of the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *See In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Additionally,

> [t]he parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's

consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

***S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002) (citation omitted).

In his first issue, Father claims that the trial court erred when it granted primary physical custody to Mother where she failed to comply with 23 Pa.C.S.A. § 5337, which requires a party wishing to relocate with a child to "notify every other individual who has custody rights to the child" at least sixty days prior to the proposed relocation. 23 Pa.C.S.A. § 5337(c)(1), (2)(i); (***see*** Father's Brief, at unnumbered pages 13-14).

A party's failure to give notice of relocation is not fatal to that relocation. As the trial court stated in its opinion, "the court '**may** consider a failure to provide reasonable notice of a proposed relocation . . .' (emphasis added)." (Trial Ct. Op., at 7) (quoting 23 Pa.C.S.A. 5337(j)).[6]

_____

[6] In a footnote, the trial court then cited the full text of section 5337(j), which provides:

(j) **Failure to provide reasonable notice**.--The court may consider a failure to provide reasonable notice of a proposed relocation as:

(1) a factor in making a determination regarding the relocation;

(2) a factor in determining whether custody rights should be modified;

(3) a basis for ordering the return of the child to the nonrelocating party if the relocation has occurred without reasonable notice;

*(Footnote Continued Next Page)*

We also note that Father made no objection to Mother's relocation at the time she moved and, in fact, Father cooperated with her by adjusting the place of the transfer of custody by mutual assent.

We quote the trial court opinion, with approval, where it states, "[t]he 22 mile move likely does not meet the definition of 'relocation' defined as, 'A change in a residence of the child which **significantly** impairs the ability of a non-relocating party to exercise custodial rights.' 23 Pa. C.S.A. § 5322[a] (emphasis added)." (Trial Ct. Op., at 6). Father's first issue is without merit.

In his second issue, Father complains that the trial court "placed far too much emphasis on Father's timeline for filing his complaint for custody/formal objection to Mother's relocation." (Father's Brief, at unnumbered page 15). He claims, "It is clear the [trial court] penalized Father for following the statute, namely by filing within the six month jurisdictional deadline. The Uniform Child Custody Jurisdiction and Enforcement Act provides that a child's 'home state' is determined by where

_____
*(Footnote Continued)* —————————

> (4) sufficient cause to order the party proposing the relocation to pay reasonable expenses and counsel fees incurred by the party objecting to the relocation; and

> (5) a ground for contempt and the imposition of sanctions against the party proposing the relocation.

23 Pa.C.S.A. 5337(j); (Trial Ct. Op., at 7 n.1).

the child resided for the past six months consecutively. (23 Pa[.]C.S.A[.] 5401).” (*Id.*). Father bases his argument on the provisions of 23 Pa.C.S.A. § 5401 that relate to interstate custody disputes; it does not apply to the case at hand. Father's second issue is without merit.

Our examination of issues three through ten and twelve through fourteen of Father's brief reveals that he has waived those issues on appeal. In making his arguments, Father does no more than re-examine the facts of this case and ask us to reach a different conclusion. This we may not do. *See C.R.F., III, supra* at 443; (*see also* Father's Brief, at unnumbered pages 16-33). In addition, Father fails to support his argument by any citation to legal authority and makes no effort to link the facts of the case to the law. In sum, Father makes no attempt to develop a coherent legal argument to support his conclusion that the trial court erred in its determinations regarding the custody and relocation of the Children and he has, therefore, waived that argument. “The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119.” *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (case citation and internal quotation mark omitted). “[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.”

*Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted).

Moreover, we have carefully examined the trial court's findings that Father complains of in issues three through ten and twelve through fourteen against the record in this matter and we are satisfied that the record supports those findings. Therefore, these issues are waived and would lack merit.

In his eleventh issue, Father argues that the trial court erred when it did not hold a hearing pursuant to 23 Pa.C.S.A. § 5329 "when it was shown that [Mother's paramour] lied about getting into ARD[.]" (Father's Brief, at unnumbered page 23). In an order entered November 18, 2014, the trial court stated, "[U]pon receipt of evidence from counsel for [Mother] that [Mother's paramour] completed the ARD program, the [c]ourt finds that neither party nor any member of their household poses a risk of harm to the minor child." (Order, 11/18/14).

Section 5329 provides:

Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that parent when considering the following offenses: . . .

23 Pa.C.S.A. § 5329. A DUI is one of the enumerated "following offenses." The trial court's order entered November 18, 2014, makes it clear that it considered the criminal conduct of Mother's paramour and determined that he does not pose a threat of harm to the Children. Father's eleventh issue is without merit.

Accordingly, we affirm the order of the Court of Common Pleas of Lancaster County, entered May 19, 2015, that awarded Mother primary physical custody of the Children, awarded Father partial physical custody, and granted Mother permission to relocate to Sinking Springs with the Children.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/2016